1  WATANABE ING & KOMEIJI LLP
   John T. Komeiji (Hawaii 2498-0)
2  First Hawaiian Center
   999 Bishop Street, 23rd Floor
3  Honolulu, Hawaii  96813
   Telephone:  (808) 544-8300
4
   LATHAM & WATKINS LLP
5  Robert D. Crockett (Cal. Bar No. 105628)*
   633 West Fifth Street, Suite 4000
6  Los Angeles, California  90071-2007
   Telephone:  (213) 485-1234
7
   LATHAM & WATKINS LLP
8  Kimberly A. Hicks (Cal. Bar No. 163285)*
   600 Broadway Avenue, Suite 1800
9  San Diego, California 92101
   Telephone:  (619) 236-1234
10
   Attorneys for Plaintiffs
11 ALOHA AIRLINES, INC. and ALOHA AIR
   GROUP, INC.
12
   *Pro Hac Vice Applications Pending
13

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 9 2007

at __1__ o'clock and __5__ min. __P__ M
SUE BEITIA, CLERK

14
15              UNITED STATES DISTRICT COURT
16                  DISTRICT OF HAWAI'I
17

| | |
|---|---|
| ALOHA AIRLINES, INC., a Hawai'i Corporation, and ALOHA AIR GROUP, INC., a Hawai'i Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MESA AIR GROUP, INC., a Nevada Corporation, CHARLES D. LAURITSEN, JOE BOCK, AND DOES 1-100, <br><br> Defendants. | Civil No. CV07-00007 DAE LEK <br><br> **COMPLAINT FOR ATTEMPTED MONOPOLIZATION; BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND FRAUD; DEMAND FOR JURY TRIAL; SUMMONS** |

EXHIBIT F

**COMPLAINT FOR ATTEMPTED MONOPOLIZATION;
BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF
GOOD FAITH AND FAIR DEALING; AND FRAUD**

COMES NOW Plaintiffs Aloha Airlines, Inc. and Aloha Air Group, Inc. (collectively "Aloha" or "Plaintiffs"), by and through their attorneys, Watanabe Ing & Komeiji LLP and Latham & Watkins LLP[1], and for their Complaint against Defendants Mesa Air Group, Inc. ("Mesa"), Charles D. Lauristen, Joe Bock and DOES 1-100 (collectively "Defendants").

## JURISDICTION AND VENUE

1.     This is a civil action seeking monetary damages and injunctive relief for attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2, breach of contract and breach of implied covenant of good faith and fair dealing.

2.     This Court has subject matter jurisdiction over the attempted monopolization claim pursuant to 28 U.S.C. §§ 1331 and 1337(a).  This Court has subject matter jurisdiction over the breach of contract, breach of implied covenant of good faith and fair dealing, and fraud claims pursuant to 28 U.S.C. § 1367(a). This Court also has subject matter jurisdiction over the breach of contract, breach of implied covenant of good faith and fair dealing, and fraud claims pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     This lawsuit alleging antitrust and contract claims arises out of defendant Mesa Air Group, Inc.'s ("Mesa") improper predatory pricing and unfair competition designed to drive plaintiffs Aloha Airlines, Inc. ("Aloha Airlines") and

--------

[1] Pro Hac Vice Applications pending

1  Aloha Air Group, Inc. ("Aloha Air Group") (together, "Aloha") out of business

2  and Mesa's improper retention and use of Aloha's valuable trade secrets and

3  proprietary information to compete unfairly against Aloha in violation of various

4  agreements.

5       5.    Aloha Airlines is a corporation organized and existing under the laws

6  of Delaware, with its principal place of business in Honolulu, Hawaii.  Founded in

7  1946, Aloha Airlines is in its 61st year of service and provides convenient all-jet

8  service connecting Honolulu, O'ahu, Kahului, Maui, Hilo, Hawai'i, Kona, Hawai'i

9  and Lihu'e, Kaua'i.  Aloha Airlines' unique trans-Pacific routes provide award

10 winning service from Oakland, Sacramento, Orange County and San Diego,

11 California, and Las Vegas and Reno, Nevada.

12      6.    Aloha Air Group is a corporation organized and existing under the

13 laws of Hawaii, with its principal place of business in Honolulu, Hawaii.

14      7.    Mesa is a corporation organized and existing under the laws of

15 Nevada, with its principal place of business in Phoenix, Arizona.  Mesa is a

16 holding company whose principal subsidiaries operate as regional carriers

17 providing scheduled passenger and airfreight service.  Mesa had never before

18 offered passenger service within the Hawaiian Islands until June 2006 when,

19 through its go! division ("go!"), it began to offer inter-island flights in Hawaii at

20 below-cost rates.

21      8.    Defendant Charles D. Lauritsen is an individual who resides in

22 Hawaii.  Upon information and belief, Aloha alleges that Mr. Lauritsen is the Chief

23 Operating Officer of go!.

24      9.    Defendant Joe Bock is an individual who resides in Hawaii.  Upon

25 information and belief, Aloha alleges that Mr. Bock is the Chief Marketing Officer

26 of go!.

27      10.    Defendants Does 1-100, being individuals, partnerships, corporations,

28 non-profit corporations, or other entities, are sued herein under their fictitious

1    names for the reason that their true names and identities are presently unknown to

2    Aloha, except that they are connected in some manner with Defendants; and/or

3    were the officers, agents, servants, employees, employers, representatives, co-

4    venturers, associates, vendors, sub-contractors or contractors and/or owners,

5    lessees, assignees, licensees of Defendants; and/or were in some manner presently

6    unknown to Aloha engaged in the activities alleged herein; and/or were in some

7    manner responsible for the wrongful acts, injuries or damages to Aloha; and that

8    their true names, identities, capacities, activities and/or responsibilities are

9    presently unknown to Aloha or its attorneys due to the limited discovery powers

10   afforded to Aloha prior to instituting suit.  Aloha prays leave to amend the

11   Complaint to show the true names and capacities, activities and/or responsibilities

12   when the same have been ascertained.

13        11.   At all relevant times herein, Mesa, Lauritsen, Bock, and Does 1-100

14   acted as agents and/or authorized representatives for each of the other defendants.

15           **GENERAL ALLEGATIONS**

16        12.   The Hawaii inter-island airline market ("Inter-Island Market")

17   consists of airline flights that travel solely from one Hawaiian island to another

18   Hawaiian island.  Prior to June 2006, three carriers operated in the Inter-Island

19   Market:  Aloha, Hawaiian Airlines ("Hawaiian") and Island Air.  Ultimately,

20   armed with and impermissibly using Aloha's own confidential and proprietary

21   data, Mesa entered the Inter-Island Market in June 2006 for the express purpose of

22   pushing Aloha out of business for the purpose of dominating the market and

23   removing competitive pressure for low fare prices.

24        13.   In December 2004, Aloha filed a voluntary petition for relief under

25   Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("the

26   Bankruptcy Proceeding").

27        14.   Prior to Aloha's filing of the Bankruptcy Proceeding, Hawaiian had

28   also filed a Chapter 11 bankruptcy petition on March 21, 2003.

4

15.     In early 2004, Mesa began a formal study, known internally as Project Hele, that examined the possibility of Mesa entering into the Inter-Island Market. One of Mesa's consultants, Mo Garfinkle, wrote an email acknowledging that Mesa's entry into the Inter-Island Market did not make sense if Aloha was still operating in that market.  Mesa's Chief Financial Officer Peter Murnane responded in an email that rather than wait for Aloha to die, Mesa should enter the Inter-Island Market and give Aloha "the last push."  Mesa entered the market to drive Aloha out of business.

16.     To effectuate Mesa's plan to drive Aloha out of the Inter-Island Market, Mesa sought to and did, in bad faith and in breach of agreement with Aloha, obtain confidential information regarding Aloha.  Claiming to be interested in evaluating a potential investment in Aloha, and after signing confidentiality agreements, Mesa received access to Aloha's confidential trade secrets and proprietary information.

17.     On or about January 6, 2005 and January 25, 2006, Mesa and Aloha entered into two separate confidentiality agreements ("Confidentiality Agreements") pursuant to which Aloha would disclose certain confidential information to Mesa for the sole purpose of enabling Mesa to evaluate its potential investment in Aloha.  At the time Mesa entered into the Confidentiality Agreements, Mesa never intended to comply with their provisions.

18.     Both the 2005 Confidentiality Agreement and the 2006 Confidentiality Agreement provide in relevant part that Mesa and its representatives were obliged to keep confidential "all such information (whether written or oral) furnished" in connection with Mesa's review of Mesa's potential investment in Aloha (the "Transaction").  Both the 2005 Confidentiality Agreement and the 2006 Confidentiality Agreement provide that:

> 1. You [Mesa] and your Representatives (a) will keep all Information confidential and will not … disclose any Information in any manner whatsoever, and (b) *will not knowingly or intentionally use any Information other*

1
2
3
4
5
6
7
8
9
10

> *than for the purpose of determining your [Mesa's] interest in entering into the Transaction*; <u>provided, however</u>, that you may reveal the Information to your Representatives (x) who need to know the Information to permit you to review and evaluate the Transaction, (y) who are informed by you of the confidential nature of the Information and (z) who agree to maintain the confidentiality of the Information.   You will be responsible for any breach by any of your Representatives of the terms of this letter agreement applicable to such Representatives.  Notwithstanding the foregoing, you also agree that you will not disclose Information to those Representatives who are direct or indirect competitors of the Company [Aloha Airlines, Inc.], or to those Representatives who are owners of direct or indirect Competitors of the Company, without first identifying such persons in writing to the Company and obtaining written approval of the same from the Company.

11  (first emphasis added).

12      19.   Both the 2005 Confidentiality Agreement and the 2006

13  Confidentiality Agreement also provide:

14
15
16
17
18
19
20

> 4.   In the event of the termination of the negotiations between the parties concerning the Transaction, and upon the written request of the Company, Airgroup, or any of our Representatives, you will promptly (a) destroy, or cause to be destroyed, all Notes in your or your Representatives' possession, (b) destroy or cause to be destroyed, or deliver or cause to be delivered, to the Company at your own expense, all copies of the written Information in your or your Representatives' possession, and (c) certify to the Company and Airgroup that you have complied with the terms of the foregoing subparts .... Any oral Information will continue to be subject to the terms of this letter agreement.

21      20.   Following the execution of the 2005 Confidentiality Agreement and

22  the 2006 Confidentiality Agreement, Mesa obtained access to and wrongfully used

23  Aloha's confidential and proprietary trade secrets and commercial information in

24  violation of the Confidentiality Agreements.  Such confidential information

25  disclosed to Mesa pursuant to the two Confidentiality Agreements included access

26  to an electronic data room (via Interlinks), oral presentations and discussions, and

27  highly confidential written presentations in 2005 and 2006 containing Aloha's

28  financial information, Aloha's business plans, Aloha's internal pro forma forecasts,

1 Aloha's internal analysis of its business and potential, Aloha's identification of its

2 strategic opportunities, and Aloha's financial information and data.

3     21.    In January 2005, Mesa and Aloha representatives met in New York

4 for the purpose of discussing Mesa's financing of Aloha.  At that meeting, and

5 pursuant to the first Confidentiality Agreement, Aloha discussed with and

6 disclosed to Mesa a confidential management presentation containing proprietary

7 data and trade secrets, including Aloha's costs and projections for its Inter-Island

8 operations.

9     22.    In January 2006, Mesa and Aloha representatives met in Phoenix to

10 discuss Mesa's possible investment in Aloha.  At that meeting, and pursuant to the

11 Confidentiality Agreements, Aloha discussed with and disclosed to Mesa another

12 confidential management presentation containing proprietary data and trade

13 secrets, including Aloha's costs and projections for its inter-island operations.

14     23.    Mesa has admitted that its decision to begin providing inter-island

15 passenger service in 2006 was based on confidential information obtained from

16 Aloha and Hawaiian during their bankruptcy cases.  During a teleconference for its

17 investors, Mesa Chief Executive Officer, Jonathan Ornstein, stated that Mesa felt

18 "pretty strongly" that its inter-island service would be "extremely profitable" and

19 "successful," as it had the "benefit of looking at Aloha [Airlines] and Hawaiian

20 [Airlines]" during their respective bankruptcies:

21

22

23

24

25

26
> I wish I could go into more detail on that, but all I can say is that, um, you know, I think Mesa has had a pretty good history of coming up with things that make sense and again, we feel that the opportunity is there, whereby we can do something creative, provide again a small, independent operation, but one that may ultimately, we think, prove to be extremely profitable.  If you look at the inter-island business and remember, *we do have the benefit of looking at both Aloha and Hawaiian when they were in bankruptcy*, we feel pretty strongly that the inter-island business can be successful for a low cost carrier.

27     24.    On June 8, 2006, Mesa began offering inter-island flights through its

28 subsidiary called "go!".  Mesa priced its go! flights at rates below that of cost.

1  Mesa's costs for a seat on an inter-island flight greatly exceed $19, however, Mesa

2  was pricing a one-way inter-island seat at only $19.  A September 26, 2006 press

3  release from Defendant Bock stated that go! would continue to price one-way

4  tickets between Honolulu and destinations in Lihue, Kahului, Kona and Hilo at

5  $19.  Mesa executives have made statements in the press implying its fares were

6  well below its costs and it had the cash reserves to sustain such below-cost fares

7  for a considerable time.  For example, Mr. Ornstein stated that "[w]ith these low

8  fares, we can go a long time.  Even if we fly empty, we could fly five years on the

9  profits the rest of our company makes in one year."

10       25.    Mesa's unreasonably priced inter-island fares are designed to drive

11  Aloha out of business and monopolize the Inter-Island Market to the detriment of

12  local consumers.  Once competition is eliminated from the Inter-Island Market

13  there will be no competitive pressure upon Mesa to maintain low fares.  If Mesa is

14  allowed to accomplish its goal, it would undoubtedly raise its below-cost fares for

15  inter-island travel to rates dramatically, to rates above pre-June 2006 market

16  ranges.

17       26.    Mesa's misuse of Aloha's confidential information allowed Mesa to

18  use such confidential information to Aloha's competitive disadvantage.

19                    **FIRST CAUSE OF ACTION**

20  **(Attempted Monopolization In Violation Of The Sherman Act, 15 U.S.C. § 2)**

21       27.    Aloha realleges and incorporates herein by reference Paragraphs 1

22  through 26.

23       28.    At all relevant times, Defendants sold, are continuing to offer to sell

24  and are advertising inter-island flights at rates less than the cost of those flights.

25       29.    At all relevant times, Defendants priced their flights at below cost

26  with the specific intent to injure consumers with higher fares once Aloha is

27  removed as a competitor.  Upon information and belief, Bock and Lauritsen have

28  been responsible for implementing the objectives of this intent.

30.    There is a dangerous probability that Defendants' conduct alleged above will result in a monopoly of the Inter-Island Market.  Aside from Mesa, only three other carriers provide inter-island service.  Two of these three carriers only recently emerged from bankruptcy.

31.    Defendants' conduct has produced, and unless relief is granted will continue to produce, anticompetitive and trade restraining effects upon interstate commerce.

32.    As a direct and proximate result of Defendants' attempted monopolization, Aloha has been injured in its business and property in an amount not yet ascertained.  In addition, the injury and threatened injury has and will irreparably harm Aloha and competition in the Inter-Island Market, and Aloha seeks appropriate injunctive and equitable relief as provided under the federal antitrust laws.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against All Defendants)

33.    Aloha realleges and incorporates herein by reference Paragraphs 1 through 32.

34.    Aloha and Mesa entered into two written Confidentiality Agreements, the 2005 Confidentiality Agreement and the 2006 Confidentiality Agreement. Both agreements were valid and enforceable contracts.  The key terms of the agreements are set forth above.

35.    Aloha has fully performed all of the obligations it owes to Mesa under the 2005 Confidentiality Agreement and the 2006 Confidentiality Agreement Agreement.

36.    Mesa breached both the 2005 Confidentiality Agreement and the 2006 Confidentiality Agreement by using the confidential information gained from Aloha pursuant to the agreements for a purpose other than determining its interest in entering into a transaction with Aloha.  Mesa, and upon information and belief,

1  Bock and Lauritsen, have used information provided under the Confidentiality

2  Agreements for Mesa's own competitive advantage.

3       37.    Mesa, and upon information and belief, Bock and Lauritsen, breached

4  both of the Confidentiality Agreements knowingly and intentionally, and in

5  furtherance of its plan to force Aloha out of business.

6       38.    When the negotiations between Mesa and Aloha concerning financing

7  of or a potential investment in Aloha terminated, Mesa failed to destroy or cause to

8  be destroyed all information from Aloha obtained pursuant to the Confidentiality

9  Agreements.

10      39.    As a direct and proximate result of Mesa's breach of the

11 Confidentiality Agreement, Aloha has been injured in its business and property in

12 an amount not yet ascertained.

13                    **THIRD CAUSE OF ACTION**

14 **(Breach of Implied Covenant of Good Faith and Fair Dealing Against All**

15                          **Defendants)**

16      40.    Aloha realleges and incorporates herein by reference Paragraphs 1

17 through 39.

18      41.    Both the 2005 Confidentiality Agreement and the 2006

19 Confidentiality Agreement include an implied covenant of good faith and fair

20 dealing.

21      42.    Mesa intended, prior to finalizing the Confidentiality Agreements, not

22 to perform all of the conditions in that agreement, and, in particular, Mesa, Bock

23 and Lauritsen intended to use the information that it obtained pursuant to the two

24 Confidentiality Agreements for uses other than evaluating a potential transaction

25 with Aloha.

26      43.    Mesa, and upon information and belief, Bock and Lauritsen, has

27 breached the implied covenant of good faith and fair dealing by knowingly and

28 intentionally breaching the confidentiality agreement in furtherance of its plan to

1  force Aloha out of business so that Mesa could replace Aloha as a primary carrier

2  in the Inter-Island Market.

3        44.    As a proximate result of Mesa's actions, Aloha has been injured in its

4  business and property in an amount not yet ascertained.

5  **FOURTH CAUSE OF ACTION**

6  **(Fraud Against All Defendants)**

7        45.    Aloha realleges and incorporates herein by reference Paragraphs 1

8  through 44.

9        46.    Mesa (and specifically, George "Peter" Murnane III) intended, prior

10  to finalizing the Confidentiality Agreements, not to perform all of the conditions in

11  that agreement, and, in particular, Mesa intended to use the information that it

12  obtained pursuant to the two confidentiality agreements for uses other than

13  evaluating a potential transaction with Aloha.

14        47.    Mr. Murnane did not inform Aloha, when he executed the

15  Confidentiality Agreements on the specific dates identified above, that he would be

16  using data obtained under those agreements for uses other than evaluating a

17  potential transaction with Aloha.  He intended to induce Aloha personnel to rely

18  upon his false representations.

19        48.    Aloha reasonably relied upon Mr. Murnane's false representations

20  asserted in the Confidentiality Agreements.  Aloha was damaged as a result of this

21  reliance.

22        49.    As a direct and proximate result of Defendants' fraudulent acts, Aloha

23  has sustained actual, special, general, consequential, compensatory and other

24  damages in amounts that shall be proved at trial.

25        50.    Defendants' acts and conduct are intentional, willful, malicious and in

26  conscious disregard of the rights and interests of Aloha, entitling Aloha to punitive

27  and/or exemplary damages.

28

11

## PRAYER FOR RELIEF

WHEREFORE, Aloha prays for the following relief:

A.    For judgment against Defendants in an amount not yet ascertained, this amount to be trebled, pursuant to 15 U.S.C. § 15(a);

B.    For Aloha's reasonable attorneys' fees and costs incurred hereto, pursuant to 15 U.S.C. § 15(a);

C.    For interest on actual damages, pursuant to 15 U.S.C. § 15(a);

D.    For injunctive relief; and

E.    For such other and further relief as the Court may deem just and proper.

DATED:    Honolulu, Hawaii, ___JAN 0 9 2007_____.

Of Counsel:
WATANABE ING & KOMEIJI LLP                    JOHN T. KOMEIJI

Of Counsel:
LATHAM & WATKINS LLP                          ROBERT D. CROCKETT
                                              KIMBERLY A. HICKS

                                              Attorneys for Plaintiffs
                                              ALOHA AIRLINES, INC. and
                                              ALOHA AIR GROUP, INC.

LA\1667139.2

12

1

2                    UNITED STATES DISTRICT COURT

3                          DISTRICT OF HAWAI'I

4

| | |
|---|---|
| 5  ALOHA AIRLINES, INC., a Hawai'i | Civil No. _____ |
| 6  Corporation, and ALOHA AIR GROUP, INC., a Hawai'i Corporation, | **DEMAND FOR JURY TRIAL** |
| 7                    Plaintiffs, | |
| 8       v. | |
| 9  MESA AIR GROUP, INC., a Nevada Corporation, CHARLES D. | |
| 10 LAURITSEN, JOE BOCK, AND DOES 1-100, | |
| 11 | |
| 12                    Defendants. | |

13                   <u>DEMAND FOR JURY TRIAL</u>

14

15          Plaintiffs ALOHA AIRLINES, INC. and ALOHA AIR GROUP, INC.

16   hereby demand trial by jury on all issues.

17

18                                          JAN 0 9 2007
          DATED:      Honolulu, Hawaii, _____.
19

20

21   Of Counsel:
     WATANABE ING & KOMEIJI LLP        JOHN T. KOMEIJI
22

23   Of Counsel:
     LATHAM & WATKINS LLP              ROBERT D. CROCKETT
24                                     KIMBERLY A. HICKS

25                                     Attorneys for Plaintiffs
                                       ALOHA AIRLINES, INC. and
26                                     ALOHA AIR GROUP, INC.

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

ALOHA AIRLINES, INC., a Hawai'i
Corporation, and ALOHA AIR
GROUP, INC., a Hawai'i Corporation,

        Plaintiffs,

      v.

MESA AIR GROUP, INC., a Nevada
Corporation, CHARLES D.
LAURITSEN, JOE BOCK, AND
DOES 1-100,

        Defendants.

Civil No. _____

SUMMONS IN A CIVIL ACTION

## SUMMONS IN A CIVIL ACTION

To the named Defendants:

    1.  MESA AIR GROUP, INC.
        410 N. 44th Street, Suite 700
        Phoenix, Arizona 85008

    2.  CHARLES D. LAURITSEN
        300 Rogers Boulevard, #23
        Honolulu, Hawaii 96819

    3.  JOE BOCK
        300 Rogers Boulevard, #23
        Honolulu, Hawaii 96819

    **YOU ARE HEREBY SUMMONED** and required to serve on

PLAINTIFFS' ATTORNEY:

    JOHN T. KOMEIJI
    999 Bishop Street, 23rd Floor
    Honolulu, Hawaii 96813

An answer to the Complaint which is served on you with this summons, within

twenty (20) days after service of this summons upon you, exclusive of the day of

service.  If you fail to do so, judgment by default will be taken against you for the

relief demanded in the Complaint.  Any answer that you serve on the parties to this

action must be filed with the Clerk of this Court within a reasonable period of time

after service.


DATED:      Honolulu, Hawaii, _____JAN 0 9 2007_____.


_____SUE BEITIA_____
CLERK OF THE COURT

_____(s) Laila M. Geronimo_____
DEPUTY CLERK OF THE COURT

2