IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ALOHA AIRLINES, INC. a Hawai'i )          CV. NO. 07-00007 DAE-BMK
Corporation, and ALOHA AIR         )
GROUP, INC., a Hawai'i             )
Corporation,                        )
                                    )
              Plaintiffs,           )
                                    )
       vs.                          )
                                    )
MESA AIR GROUP, INC., a Nevada )
Corporation, CHARLES D.            )
LAURITSEN, JOE BLOCK, AND          )
DOES 1-100,                         )
                                    )
              Defendants.           )
_____ )

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

On Monday, March 12, 2007, the Court heard Defendants' Motion to

Dismiss.  John T. Komeiji, Esq., Robert D. Crockett, Esq., and Brian Kang, Esq.,

appeared at the hearing on behalf of Plaintiffs; Robert Marks, Esq., and Maxwell

Blecher, Esq., appeared at the hearing on behalf of Defendants.  After reviewing

the motion and the supporting and opposing memoranda, the Court DENIES

Defendants' Motion to Dismiss.

BACKGROUND

Plaintiffs, Aloha Airlines, Inc. and Aloha Air Group, Inc. ("Aloha"), are local airline carriers that service the Hawaiian islands. (Complaint ¶ 12.) Before June 2006, three airline carries dominated services to the Hawaiian islands, with Aloha and Hawaiian Airlines controlling the majority of services. (Id.) In June 2006, Defendants, Mesa Air Group, Inc., et al. ("Mesa"), entered the market, offering rates below that of cost.[1] (Id. ¶ 24.)

In early 2004, Mesa began a study contemplating entry into the market. (Id. ¶ 15.) At some point, Aloha apparently obtained information from that study, in the form of an email exchange between one of Mesa's consultants, Mo Garfinkle, and Mesa's Chief Financial Officer, Peter Murnane, indicating that Mesa should enter the market and push Aloha out. (Id.) In December 2004, Aloha filed for Chapter 11 relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. ("Bankruptcy"). (Id. ¶ 13.)

Some time later, Mesa entered into negotiations with Aloha for potential investment purposes, resulting in two separate confidentiality agreements

---

[1] For purposes of this Motion, this Court need not determine the actual market. Aloha characterizes the market as the "Inter-Island Market," though Mesa does not concede the existence of such a market. If or when this case goes to trial, the market will be defined after receiving evidence from each side.

("Confidentiality Agreements") on or about January 6, 2005 and January 25, 2006. (Id. ¶ 17.)  Under the Confidentiality Agreements, Aloha would disclose confidential information for Mesa to evaluate its potential for investment in Aloha. The Confidentiality Agreements contain a provision that "all such information (whether written or oral) furnished" in connection with Mesa's review of its potential investment would remain confidential.  (Id. ¶ 18.)  The Confidentiality Agreements also provide that Mesa "will not knowingly or intentionally use any Information other than for the purpose of determining your [Mesa's] interest in entering into the Transaction[.]"  (Id.)  If terminated, Mesa also was under an obligation to destroy "all copies of the written Information" in its possession, and "[a]ny oral Information will continue to be subject to the terms of this letter agreement."  (Id. ¶ 19.)

Following execution of the Confidentiality Agreements, Mesa obtained access to confidential and proprietary trade secrets and commercial information, such as access to an electronic data room, oral and written presentations and discussions that contained Aloha's financial information, Aloha's business plans, internal pro forma forecasts and analysis of its business and potential, identification of strategic opportunities, and financial information and data.  (Id. ¶ 20.)  Aloha identifies at least two meetings, one held in January

2005 and the other in January 2006, during which Aloha discussed with and disclosed to Mesa confidential information containing proprietary data and trade secrets, including Aloha's costs and projections for its operations.  (Id. ¶¶ 21-22.)

Since then, Mesa's Chief Executive Officer, Jonathan Ornstein, has acknowledged publicly that Mesa did "have the benefit of looking at both Aloha and Hawaiian when they were in bankruptcy," contributing to Mesa's "pretty strong" feeling that it could be "successful for a low cost carrier."  (Id. ¶ 23.)  On June 8, 2006, Mesa began to offer its inter-island flights through its subsidiary, "go!," pricing its flights at below-cost rates, while indicating that those low costs would remain in effect for some time, possibly for five years.  (Id. ¶¶ 7, 24.)

In light of those developments, Aloha filed a Complaint on January 9, 2007, asserting a federal claim for attempted monopolization, challenging Mesa's predatory pricing in violation of the Sherman Act, 15 U.S.C. § 2, and contract claims for breaching the Confidentiality Agreements and defrauding Aloha.  Aloha sought monetary damages and injunctive relief, and it made a jury demand. (Id. ¶ 1; Demand for Jury Trial.)  The heart of Aloha's Complaint is that Mesa sought to drive Aloha out of business with Mesa's below market costs to monopolize the market, and that Mesa misused confidential information, in violation of the Confidentiality Agreements, to accomplish that goal.  (Id. ¶¶ 25, 26.)  Once that

4

objective is accomplished, Aloha asserts that Mesa will raise costs because it will have no competition and, thus, no incentive to keep costs low.  (Id. ¶ 25.)  Mesa filed the instant Motion on January 29, 2007, which Aloha opposed on February 22, 2007.  Mesa filed its reply on March 1, 2007.

STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Livid Holdings, 416 F.3d at 946.  "However, the court is not required to accept legal conclusions in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (quoting Clegg, 18 F.3d at 754-55)).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

5

unreasonable inferences." Id. (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). Thus, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

DISCUSSION

Mesa argues that the Airline Deregulation Act ("ADA") preempts Aloha's contract and fraud claims. Mesa does not take issue with Aloha's first cause of action concerning attempted monopolization in violation of the Sherman Act. Thus, even if this Court were to find that the ADA preempts Aloha's contract and fraud claims, Aloha's first cause of action still would stand. Aloha responds that, under established precedent, the ADA does not preempt the contract or fraud claims at issue here.

The ADA contains a preemption provision:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added). "'Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in

the statute's language or implicitly contained in its structure and purpose.'"
Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quoting FMC
Corp. v. Holliday, 498 U.S. 52, 56-57 (1990)).  "The question, at bottom, is one of
statutory intent, and [this Court must] accordingly 'begin with the language
employed by Congress and the assumption that the ordinary meaning of that
language accurately expresses the legislative purpose.'"  Id. (quoting Holliday, 498
U.S. at 57).

      In Morales, the Supreme Court was asked to determine whether the
ADA preempted states from regulating deceptive airline fair advertisements
through their consumer protection statutes.[2]  See id. at 378.  In doing so, the Court
examined the scope of the ADA's preemption provision, focusing on the "relating
to" language.  See id. at 383-84.  Relying on its prior broad interpretation of
identical language in an employment statute, the Court adopted a similarly broad
reading of the "relating to" language in the ADA, finding that it preempts state
actions having a "connection with or reference to" airline "rates, routes, or
services," which now would be "prices, routes, or services."  Morales, 504 U.S. at
384; see also Lyn-Lea Travel Corp. v. Am. Airlines, Inc., 283 F.3d 282, 286 n.4

---

[2]  The Supreme Court in Morales cites ADA, 49 U.S.C. § 1305(a)(1), which
since has been re-codified as 49 U.S.C. § 41713.

(5th Cir. 2002) ("As part of the recodification, Congress changed the phrase 'rates, routes, or services' to 'price, route, or service," which was not intended to change existing law substantively). The Court ultimately concluded that the ADA preempted guidelines for airline fare advertising, emphasizing the relation to airline prices. See Morales, 504 U.S. at 390-91. The Court did not, however, set down a blanket rule preempting state law claims; rather, it left open the possibility that the ADA would not preempt nonprice-related claims or any other state claim that is "'too tenuous, remote, or peripheral' [] to have pre-emptive effect." Id. at 390 (citing Shaw v. Delta Air lines, Inc., 463 U.S. 85, 100 n.21 (1983)). Significantly, the Supreme Court made clear that its decision was not intended to "give the airlines carte blanche to lie to and deceive consumers." Id.

        Since then, numerous courts have made room for state claims where the claims are only "tenuously, remotely, or peripherally" related to the airlines prices, routes, or services. See, e.g., Smith v. Comair, Inc., 134 F.3d 254, 257 (4th Cir. 1998); Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1433 (7th Cir. 1996); West v. Northwest Airlines, Inc., 995 F.2d 148, 151 (9th Cir. 1993); Peterson v. Cont'l Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997). Courts also look to the purpose of the ADA when determining whether it preempts state claims, so as not to give airlines free reign to enrich themselves

without state law consequences.  <u>See, e.g.</u>, <u>Charas v. Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1261 (9th Cir. 1998); <u>Taj Mahal Travel, Inc. v. Delta Airlines</u>, 164 F.3d 186, 195 (3rd Cir. 1998); <u>In re Air Transp. Excise Tax Litig.</u>, 37 F. Supp. 2d 1133, 1140 (D. Minn. 1999).  As such, when determining whether the ADA preempts state law claims, this Court must look to the underlying facts of the claims, whether contract, tort, or otherwise, to determine whether they are preempted.  <u>See, e.g.</u>, <u>Travel All Over The World, Inc.</u>, 73 F.3d at 1433.  With that in mind, this Court turns to the case at hand, addressing preemption of each claim in turn.

A.  <u>Breach of the Confidentiality Agreements Not Preempted</u>

Despite the broad construction of the statutory language, the Supreme Court has not upheld preemption in all instances involving state enforcement of laws "related to" airline prices, routes, or services.  The Court specifically has excluded breach of contract claims from preemption.  <u>See</u> <u>Am. Airlines, Inc. v. Wolens</u>, 513 U.S. 219 (1995).  In <u>Wolens</u>, the Supreme Court determined that the Illinois Consumer Fraud Act served as a primary means to police marketing practices for airline services; thus, that level of control was intended to be left largely to the airlines.  <u>See id.</u> at 228.  The ADA was not, however, designed to monitor airlines' contractual undertakings and private, contractual disputes related

9

to airline prices, routes, or services.  See id. at 231-32.  Accordingly, under

Wolens, a party may seek relief under state contract law from an airline that has

"dishonored a term the airline itself stipulated" in a contract, without fear of

enlarging or enhancing rights under the ADA "based on state laws or policies

external to the agreement."  Id. at 232.

        Mesa attempts to distinguish Wolens on the basis that it created a

narrow exception, which subsequent case law has limited.  See, e.g., Buck v. Am.

Airlines, Inc., 476 F.3d 29, 36 (1st Cir. 2007); Breitling U.S.A., Inc. v. Federal

Express Corp., 45 F. Supp. 2d 179, 184 (D. Conn. 1999); Stone v. Cont'l Airlines,

Inc., 905 F. Supp. 823, 826 (D. Haw. 1995).  Those cases do not, however, involve

the type of pure, contractual claim that is present here.  In Buck, the claims at issue

involved refunds of base airline fares, which the plaintiffs were denied after

purchasing nonrefundable airline tickets.  See 476 F.3d at 31.  The First Circuit

distinguished that case from Wolens in that the plaintiffs' claims relied on a single

word in the tickets, i.e., "nonrefundable," and, thus, that word alone could not

place the plaintiffs' claims within the safety of the Wolens contract exception.  See

id.  In Breitling, the plaintiff attempted to use the "equitable doctrine of waiver" to

invalidate a condition of liability in the contract.  See 45 F. Supp. 2d at 186.

Because the plaintiff relied on an equitable doctrine, however, to waive a term of

the agreement, the plaintiff's claim was preempted because it would have

amounted to an "enlargement or enhancement" of the ADA based on state law. Id.

at 186-87.  Finally, in Stone, although a claim was stylized as one of breach of

contract and implied warranties to provide "safe and secure premise[s]," it was

based on the same facts and allegations underlying the tort claims for assault and

battery of a first-class passenger by another intoxicated and disorderly passenger,

which claims were preempted because they pertained to airline services.  See 905

F. Supp. at 826.  None of those situations mirror that presented here, where

Aloha's claim is based on express, contractual provisions that are nothing but

contractual in nature.

　　　　Not only is Aloha's claim for breach of the Confidentiality

Agreements grounded in terms of the contract, i.e., those terms forbidding such

"knowing and intentional" use of confidential information other than for the

purpose of investing in Aloha, but it also seeks to promote the policies underlying

deregulation.[3]  The purpose of the ADA "was to encourage and develop an air

---

[3]  At the hearing, Mesa raised the argument that Aloha's state claims merely
serve as a backdoor attempt to prevent Mesa's "monopolistic" practices, in case
Aloha fails to prevail on its Sherman Act claim.  Specifically, Mesa asserted that, if
Aloha wins on the monopolization claim, the state claims will be moot.  This Court
disagrees.  Even if Aloha were not to prevail on its Sherman Act claim, Aloha's
state claims may be litigated because they are separate and distinct.

transportation system that 'relies on competitive market forces to determine the quality, variety, and price of air services.'" Trans World Airlines, Inc. v. Mattox, 897 F.2d 773, 777 (5th Cir. 1990) (citing ADA, Pub. L. No. 95-504, 92 Stat. 1705 (1978)), aff'd in part and rev'd in part on other grounds, Morales, 504 U.S. 374. "The ADA was based on a Congressional assumption that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services.'" Abdu-Brisson v. Delta Air Lines, Inc., 128 F.3d 77, 84 (2d Cir. 1997) (citing Morales, 504 U.S. at 378)).  Aloha's breach of contract claim rests predominantly on Mesa's "theft of confidential information," as Mesa coins it, to give it a competitive edge and, ultimately, to push Aloha out of the market, which, if proven, would undermine the policies underlying the ADA.

Notwithstanding, Mesa also claims that its use of federal defenses provides another avenue for its preemption argument.  Specifically, Mesa appears to contend that, because it raises federal defenses that "arise from law external to the terms of the contract itself, the ADA preempts the claim under Wolens." (Mesa's Motion at 16.)  Mesa raises two defenses to Aloha's contract claims:  (1) that 49 U.S.C. § 40101(a)(13) allows it, under any circumstances, entry into the market under a public interest rationale of "encouraging entry into air

transportation markets by new and existing air carriers" and (2) that certain

Department of Transportation regulations, starting with 14 C.F.R. § 253.7, allow

price changes upon compliance with certain notice requirements on tickets and

preempts any state law on that subject; and, even though those regulations apply to

"interstate and overseas air transportation," they should apply to the Hawaiian

islands for the reasons that Mesa provides.  (Mesa's Mtn. at 15.)  Mesa cites Delta

Air Lines, Inc. v. Black, 116 S.W.3d 745, 754-56 (Tex. 2003), and Smith v.

Comair, 134 F.3d at 258-59, in support, neither of which this Court finds

compelling.

      Black involved claims related to boarding procedures and seating,

namely, that the respondent's wife was denied first-class seating, which claims

generally are preempted under the ADA as being related to services.  See 116

S.W.3d at 753.  Mesa argues that the court in Black reached that decision because

of an "external remedy" that was offered.  Id. at 755.  That was not, however, the

primary reason why the court reached its decision.  The court principally relied

upon the fact that boarding and seating procedures related to airline services and

that federal regulations govern compensation for boarding problems.  See id. at

756.  Thus, to allow state common law to govern such actions could open the door

to "extensive multi-state litigation, launching inconsistent assaults on federal

13

deregulation in the airline industry, every time an airline reassigned a passenger's seat."  Id.  Similarly, Comair dealt with refusal to board a passenger, in which the Fourth Circuit relied on the same assault of "fifty states" rationale and on the fact that the airline raised federal defenses that allow it to refuse permission to board based on safety concerns.  See, 134 F.3d at 258.  "Because [the plaintiff's] contract claim [wa]s based upon [the airline's] refusal to permit him to board, it directly implicate[d] the airline's discretion and/or duty under federal law"; thus, the ADA preempted the plaintiff's claim.  See id.

Here, Aloha's claim does not directly implicate any well-recognized service under the ADA, thus directly implicating a defense under federal law, as in Comair.  Rather, Mesa raises federal defenses related to its ability to enter the market and to change pricing, which, at best, only indirectly address Aloha's contract claims of theft of confidential information.  Mesa's defenses imply that federal law allowed it to use confidential information to gain a foothold in the market.  Without touching on the validity of those arguments, this Court cannot find that Mesa's defenses, which only indirectly relate to Aloha's breach of contract argument, removes Aloha's claim from the Wolens contract exception to preemption.  To find otherwise would permit an airline to think of creative federal defenses external to the terms of the contract, in any contract case involving

14

airlines, to invoke the ADA's preemption provision and to avoid the <u>Wolens</u>

breach of contract exception.  That result, in effect, would undermine the exception

carved out in <u>Wolens</u>, as it would provide an avenue for airlines to argue

preemption through invocation of federal defenses anytime that someone brings a

contract claim against them.  None of the cases that Mesa provides would suggest

such a withdrawal from established precedent.

   Similarly, this Court is not persuaded by the argument that Aloha's

claims should be preempted because of the damages sought, which, according to

Mesa, would require the Court to look outside of the Confidentiality Agreements to

prices and services.  During the hearing, Aloha's counsel emphasized that this

Court must look to the <u>claim</u>, not to the remedy requested to determine whether

preemption applies.  <u>See, e.g.</u>, <u>Wolens</u>, 513 U.S. at 227-32 (analyzing whether

contract <u>claims</u> survive preemption, without looking to damages); <u>Travel All Over

the World</u>, 73 F.3d at 1429-32 (same).  This Court agrees.  If this Court were to

look to the remedy, as Mesa requests, then virtually any contractual claim based on

the terms of a contract would be preempted because damages, in many if not most

cases, inevitably would relate to prices and services.  Again, that result would

undermine the <u>Wolens</u> exception, leaving little room for any state contract claim

against an airline.  Here, even assuming, for now, that damages will be awarded,

the damages would be based on Mesa's breach of the terms of the Confidentiality

Agreements, which is the focal point of the inquiry.  Additionally, as Aloha's

counsel stated during the hearing, the damages, if awarded, will be determined

based upon traditional common law notions of damages, similar to the type of

determination that would have been made in <u>Wolens</u>.  Accordingly, given the

purpose of the ADA and the <u>Wolens</u> contract exception covering the type of pure

breach of contract claims contemplated here, this Court finds that the ADA does

not preempt Aloha's claims that Mesa breached the terms of its Confidentiality

Agreements through use of confidential information to compete in the market.

      B.  <u>Implied Covenant of Good Faith and Fair Dealing Not Preempted</u>

      Along the same lines, Mesa argues that Aloha's claim for breach of

the implied covenant of good faith and fair dealing is preempted.   The Ninth

Circuit has upheld a claim for breach of implied warranty and fair dealing for

compensatory damages, though not for punitive damages, because the claim was

"too tenuously connected to airline regulation to trigger preemption under the

ADA." <u>West</u>, 995 F.2d at 151.  <u>West</u> involved the overbooking of an airline flight

and the refusal to allow a passenger to board, prompting the passenger to bring the

instant claim in state court, which then was removed to federal court on the basis of

diversity jurisdiction.  <u>See id.</u> at 149-50.  On remand from the Supreme Court,

following its decision in <u>Morales</u>, the Ninth Circuit found that "under the reasoning

in <u>Morales</u>, the ADA preempts [the passenger's] claim for punitive damages under

state contract and tort law, but that it does not preempt his claim for compensatory

damages under state law." <u>Id.</u> at 151.  Under provisions of a federal regulation

contemplating relief to passengers for overbooked flights, the third provision

permitted recovery of damages in a court of law.  <u>See id.</u> at 152.  As such, to

uphold preemption of the passenger's state law claims all together would

eviscerate that third provision.  <u>See id.</u>  The Ninth Circuit ultimately permitted

compensatory claims for breach of the implied covenant, but not punitive damages

because "overbooking" and "bumping" are acceptable forms of price competition,

in line with the goals of deregulation.  <u>See id.</u>

      Mesa argues that the vitality of <u>West</u> is questionable in light of

<u>Wolens</u>, which was decided after <u>West</u>.  Mesa also argues that (1) <u>West</u> is

inapplicable here because the Ninth Circuit held that the claim did not relate to the

airline's prices, routes or services, unlike the present situation; and (2) <u>West</u>

involved federal regulations that implicitly allowed state law claims, unlike here.

<u>See id.</u> at 151-52.  First, as <u>West</u> is consistent with <u>Wolens</u> in that both allowed

contract claims despite the ADA's preemption provision, albeit for different

reasons, this Court need not contemplate overruling <u>West</u>.  The fact that Justice

17

O'Connor's concurrence/dissent in <u>Wolens</u> cited <u>West</u> for the view that the ADA

does not carve out an exception for state contract claims that have a relation to

airline prices, routes, or services lends little support to Mesa's argument, as that

view does not contradict the majority opinion.  <u>Compare</u> 513 U.S. at 231-32, <u>with</u>

<u>id.</u> at 241 (O'Connor, J., with whom Thomas, J. joins in part, concurring in part

and dissenting in part).

Second, as in <u>West</u>, Aloha's claim is just as tenuously connected to

airline prices, routes, or services.  Aloha challenges Mesa's use of confidential

information obtained during negotiations, in violation of the Confidentiality

Agreements, to compete and, ultimately, to push Aloha out of the market.  The

primary issue, therefore, revolves around compliance with the Confidentiality

Agreements.  The issue may have a secondary effect of challenging Mesa's prices,

but only to the extent that Mesa determined its prices based on Mesa's alleged theft

of confidential information.  In other words, Aloha is not challenging the prices,

<u>per se</u>, but rather it is challenging the means by which Mesa was able to determine

those prices, <u>i.e.</u>, through breaching its contract and implied covenant of good faith

and fair dealing with Aloha.  Thus, above all else, Aloha's claims are grounded in

breach of contract and the implied covenant of good faith and fair dealing, not in

laws, regulations, or provisions that relate to Mesa's prices, routes, or services to permit preemption.

Furthermore, the out-of-district cases on which Mesa relies to support the contrary position are inapplicable because, as Aloha points out, in each case the plaintiff sought to extend or to contradict the terms of the contract, rather than to abide by the agreed-upon terms.  See A.I.B. Express, Inc. v. FedEx Corp., 358 F. Supp. 2d 239, 253 (S.D.N.Y. 2004) (finding preemption of breach of implied covenant of good faith and fair dealing because the plaintiffs sought "to add" to the terms of the contract by imposing a duty beyond the termination clause, thus constituting an enlargement of the contract); Stone, 905 F. Supp. at 825-26 (finding preemption where the breach of implied warranty was rooted in the same facts and allegations underlying the tort claims, rather than in contract, that pertained to the airline's services for the treatment of passengers); Power Standards Lab., Inc. v. Federal Express Corp., 26 Cal. Rptr. 3d 202, 207-08 (2005) (concluding that the ADA preempted the plaintiff's claims because the plaintiff sought relief and damages that were external to or not contemplated by the agreement); Howell, et al. v. Alaska Airlines, Inc., 994 P.2d 901, 905 (Wash. Ct. App. 2000) (determining that a challenge to an airline's refusal to refund the price of a nonrefundable ticket was preempted because the contract authorized such action; thus, the appellants did

not seek to enforce terms of the contract, but rather sought to enlarge or to enhance the contract); Blackner v. Cont'l Airlines, Inc., 709 A.2d 258, 260 (N.J. Super. Ct. App. Div. 1998) (finding preemption where the appellant argued that a surcharge to replace a lost ticket violated the implied covenant of good faith and fair dealing where the contract actually authorized such surcharges).

       Although Mesa argues in its reply that those "opinions never stated that such was a key factor in the analysis," the facts and the analyses speak for themselves.  (Mesa's Reply at 10.)  The courts in each case distinguish between claims based on terms of the contract and those based on arguments external to the contract, finding that the latter claims will be preempted because they amount to attempts to extend or to enlarge the contract through state law, rather than through agreed upon terms.  See, e.g., Power Standards Lab., Inc., 26 Cal. Rptr. 3d at 206 ("Helpful to understanding what is and what is not prohibited to state involvement is the distinction between what the parties bargain for and what is externally imposed upon that bargain by a state."). To boot, Aloha cites an excerpt that actually highlights the significance of that distinction.  See A.I.B. Express, Inc., 358 F. Supp. 2d at 253 (finding that the plaintiff's claim of breach of the implied covenant of good faith and fair dealing was preempted because the claims "add[ed] to the terms of [the defendant] FedEx's contractual obligations," thus constituting

an "enlargement of FedEx's obligations based on state policies external to the agreement").

Based on the above, this Court sees no reason to distinguish the Ninth Circuit's decision in <u>West</u>, which permits claims of breach of the implied covenant of good faith and fair dealing where such claims are tenuously connected to an airline's prices, routes, or services, as they are here. Thus, the ADA does not preempt Aloha's claim of breach of the implied covenant of good faith and fair dealing on the facts of this case.

### C. Fraud Claim Not Preempted

Mesa contends that Aloha's claim for fraudulent inducement is preempted under the ADA, even though it relates to the Confidentiality Agreements. It, furthermore, argues that Aloha's claim should be dismissed for failure to plead fraud with the specificity required under Federal Rules of Civil Procedure 9(b) ("Rule 9(b)"). Aloha responds that it pled each element for a claim of fraud with specificity and that Mesa does not specify any pleading deficiencies. Aloha also disputes any preemption.

To start, handling the contentions in reverse order, Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To support a finding of fraud, the

21

evidence must be clear and convincing.  See <u>Hawaii's Thousand Friends v.</u>
<u>Anderson</u>, 768 P.2d 1293, 1301 (Haw. 1989).  The evidence must demonstrate
that:  (1) the defendant made false representations, (2) with knowledge that the
representations were false (or without knowledge that they were either true or
false), (3) in contemplation of the plaintiff relying upon them, and (4) the plaintiff
actually relied upon them.  See <u>Shoppe v. Gucci Am., Inc.</u>, 14 P.3d 1049, 1067
(Haw. 2000).   "Substantial pecuniary damages" also must be proven with the goal
of placing the plaintiff in the position in which the plaintiff would have been
absent the fraud.  See <u>Anderson</u>, 768 P.2d at 1301.  Aloha pled that Mesa (through
George "Peter" Murnane III) intended not to perform conditions of the
Confidentiality Agreements, and that Mesa planned to use the information obtained
pursuant to the Confidentiality Agreements other than for uses permitted under the
agreements.  (<u>Complaint</u> ¶ 46.)  Aloha also pled that, when executing the
Confidentiality Agreements, Mr. Murnane did not inform Aloha of Mesa's
intention to use the information for purposes other than for investment in Aloha
because Mesa sought to induce Aloha to rely on Mr. Murnane's representations.
(<u>Id.</u> ¶ 47.)  Reasonably relying upon those representations, Aloha pled that it
entered into the Confidentiality Agreements, and it was damaged as a result,
sustaining actual, special, general, compensatory, consequential and other damages

22

in amounts to be proven at trial.  (<u>Id.</u> ¶¶ 48-49.)  Aloha also pled that Mesa's acts were intentional, malicious, willful, and in conscious disregard of Aloha's rights, entitling it to punitive and/or exemplary damages.  (<u>Id.</u> ¶ 50.)

Based on the foregoing, Aloha pled with sufficient particularity the elements of fraud.  First, although Aloha does not refer to the actual representations that Mr. Murnane made, a reasonable inference from the allegations is that Mr. Murnane falsely represented that Mesa would comply with the terms of the Confidentiality Agreements.  Second, Aloha pled that those representations were made with knowledge that Mesa never intended to follow them; thus, the representations were made with knowledge of their falsity.  Third, Aloha pled that the representations were made in an attempt to induce Aloha to enter into the Confidentiality Agreements; thus, Mesa contemplated that Aloha would rely upon the representations in making its decision to enter into the agreements.  Fourth, Aloha pled that it, in fact, entered into the Confidentiality Agreements based upon its reliance on the representations.  Finally, Aloha pled substantial pecuniary damages that it claims it will prove at trial.  Consequently, this Court finds that Aloha's Complaint pled the purported fraud with particularity under Rule 9(b).

Next, Mesa claims that the ADA preempts tort claims, such as
fraudulent inducement, citing a Seventh Circuit case in support.  <u>See</u> <u>United
Airlines, Inc. v. Mesa Airlines, Inc.</u>, 219 F.3d 605, 610 (7th Cir. 2000).  Mesa
appears to devalue a key part of that proposed rule, however.  Tort claims "are
preempted when they would have a significant effect on air carriers' [prices],
routes, or services," as was the case with the claims in <u>United Airlines</u> where they
involved an airline's routes and divisions of revenues.  <u>Id.</u> at 611.  Similarly, the
other cases upon which Mesa relies involve claims with a direct "relation to" air
carriers' prices, routes, or services, unlike the claims here.  <u>See</u> <u>Lyn-Lea Travel
Corp.</u>, 283 F.3d at 288-89 (concluding that the plaintiff's claims of fraudulent
inducement to contract to use the airline's computer reservations system ("CRS")
were preempted because the airline's "policies relating to the CRS system [we]re
connected with the economic aspects of its services," and the Department of
Transportation's regulations applicable to CRS systems evidenced Congress's
intent to preempt state law concerning CRS services); <u>Comair</u>, 134 F.3d at 259-60
(determining that the ADA preempted the plaintiff's tort allegations insofar as they
related to the airline's refusal to permit the plaintiff to board his flight where the
plaintiff even conceded that boarding practices were considered "services"); <u>Travel
All Over The World, Inc.</u>, 73 F.3d at 1432-34 (finding no preemption for breach of

contract and slander and defamation claims because they did not relate to prices, routes, and services, but finding preemption for intentional tort claims because they "expressly refer to airline 'services,'" i.e., refusal to transport passengers who had booked flights); Yellow Transp., Inc. v. DM Transp. Mgmt. Serv., Inc., No. 06-CV-1517, 2006 WL 2871745, at *3 (E.D. Pa. July 14, 2006) (concluding that a similar statute preempted the plaintiff's tort claims because they were connected to the rates that the plaintiff "was charging, however unwittingly, to its customers"); Deerskin Trading Post, Inc. v. UPS of Am., 972 F. Supp. 665, 672 (N.D. Ga. 1997) (finding preemption under a similar statute because each state tort claim related to prices that the defendant charged for various services, namely, "that [the] [d]efendant inappropriately charged [the] [p]laintiff prices based on the 'dimensional weight' of various packages when Defendant should have charged [the] [p]laintiff prices based on the actual weight of the packages").

Consequently, this Court looks to the underlying facts of Aloha's claims to determine whether they are related to Mesa's prices, routes, or services or are only "tenuously, remotely, or peripherally" connected. See Morales, 504 U.S. at 390; Comair, 134 F.3d at 257; Travel All Over The World, Inc., 73 F.3d at 1433; West, 995 F.2d at 151; Peterson, 970 F. Supp. at 249. Although, according to Wolens, the ADA would preempt claims under a state consumer fraud statute

25

where the statute guides practices related to airline prices, routes, or services,

Wolens did not lay down a blanket rule that all tort claims are preempted, even if

tenuous.  See 513 U.S. at 224, 228; see also Charas, 160 F.3d at1264 (indicating, in

a case involving a personal injury claim, that "[a]lthough Morales and Wolens do

not directly resolve whether the [ADA] preemption encompasses state law tort

claims, they certainly suggest that such claims are not within the intended reach of

the preemption").

      As Aloha indicates, courts have upheld state tort claims against

airlines when those claims do not undermine the purpose of the ADA to promote

competition in the airline industry.  See, e.g., Charas, 160 F.3d at 1261 (holding

that "in enacting the ADA, Congress intended to preempt only state laws and

lawsuits that would adversely affect the economic deregulation of the airlines and

the forces of competition within the airline industry"); Taj Mahal Travel, 164 F.3d

at 195 (concluding that the plaintiff's defamation claims were not preempted

because the claims did not frustrate Congressional intent, did not impose any type

of regulation on the airlines, and were too "tenuous, remote, or peripheral" to be

preempted); Abdu-Brisson, 128 F.3d at 84; In re Air Transp. Excise Tax Litig., 37

F. Supp. 2d at 1140 (finding no preemption under the ADA for unjust enrichment,

money had and received, and conversion claims because they did not frustrate the purpose of the ADA).

In the instant case, Aloha's fraud claims are only tenuously, remotely, or peripherally related to Mesa's pricing.  The fraud claims principally involve alleged fraudulent representations that Mesa made to Aloha indicating that Mesa would not use information obtained pursuant to the Confidentiality Agreements for purposes other than the transaction at issue, i.e., investment in Aloha, when it, as Aloha claims, never intended to keep those promises.  The claims only remotely relate to Mesa's pricing in that Mesa allegedly used the information obtained through fraudulent means, ultimately, to determine its pricing for seats.  Additionally, even if damages are awarded, looking to prices or services to determine the damages award will not change the analysis because, as mentioned, this Court must look to the claim, not to the remedy, to determine whether preemption applies.  Thus, because Aloha's claim does not amount to enforcement of a law, regulation or other provision relating to a price, route, or service of an air carrier under the ADA, any relation to prices is too indirect or peripheral to the heart of Aloha's contention to warrant preemption.

Additionally, preempting such claims, under the circumstances of this case, would work to contravene the purpose of the ADA to promote competition

27

among airlines.  That is so because Aloha's claim is based on Mesa's use of the

confidential information to keep prices of fares below-cost to drive out Aloha and

to monopolize the market, after which Mesa likely would raise prices.  As the

Ninth Circuit held in <u>Charas</u>, the only state laws that the ADA preempts are those

"that would adversely affect the economic deregulation of the airlines and the

forces of competition within the airline industry."  160 F.3d at 1261.  By

implication, those state laws that promote the underpinnings of deregulation and

competition within the airline industry should not be preempted.  As Aloha's

claims are only tenuously related to the prices, routes, and services of Mesa and, if

proven, would work to support the goals underlying deregulation of the airline

industry, this Court will not dismiss Aloha's fraud claims, nor will it dismiss its

other claims, as preempted under the ADA.

D.  <u>Punitive Damages and Injunctive Relief</u>

Mesa also asserts that the punitive damages and injunctive relief that

Aloha seeks are preempted under the ADA.  Where an award of punitive damages

serves to penalize a party for engaging in the very sort of competition for which the

ADA was enacted to encourage, the damages will be preempted.  <u>See</u> <u>West</u>, 995

F.2d at 152 (preempting punitive damages where they related to "overbooking"

and "bumping," which are acceptable forms of price competition).   Moreover,

28

where the punitive damages relate to airline prices, routes, and services, they will

be preempted, as with all other claims that relate to the same.  See, e.g., All Over

the World, Inc., 73 F.3d at 1432 n.8.  At least one court has taken a narrow

interpretation of that rule to find that punitive damages, as well as injunctive relief,

are preempted because they, apparently in all cases, constitute an enhancement of a

contract, whereas at least one court has viewed the rule, as this Court does, to find

that not all claims of punitive damages are preempted under the ADA.  Compare

Deerskin Trading Post, 972 F. Supp. at 673 (relying on and interpreting narrowly

the footnote pertaining to punitive damages in All Over the World, Inc., 73 F.3d at

1432 n.8), with Peterson, 970 F. Supp. at 251-52 (finding that the Seventh Circuit,

in All Over the World, did not find "that claims [of] punitive damages are always

preempted under the ADA"); see also In re Air Crash Disaster at Sioux City, Iowa,

on July 19, 1989, 734 F. Supp. 1425, 1428 (N.D. Ill. 1990) (upholding punitive

damages under the Federal Aviation Act because they were not preempted); In re

Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987,

721 F. Supp. 1185, 1187 (D. Colo. 1988) (same).  An award of punitive damages

here would not penalize airlines from engaging in the type of competition that the

ADA sought to promote, but rather would encourage that form of competition.

Moreover, as this Court has indicated, Aloha's claims only peripherally relate to

29

Mesa's prices, routes, and services.  Thus, in light of the purpose of the ADA and the nature of Aloha's claims, this Court concludes that Aloha's claim for punitive damages are not preempted.

Nor are Aloha's claims for injunctive relief preempted, for similar reasons.  Aloha's claims do not relate to pricing, except tenuously; thus, <u>Deerskin Trading Post</u> is not persuasive.  <u>See</u> 972 F. Supp. at 673.  Furthermore, the other case that Mesa cites actually upheld the plaintiff's claim for injunctive relief because it did not relate to the airline's prices, routes, or services.  <u>See</u> <u>All World Prof'l Travel Servs. v. Am. Airlines, Inc.</u>, 282 F. Supp. 2d 1161, 1170-72 (C. D. Cal. 2003).  To reach that conclusion, the court in <u>All World Prof'l Travel Servs.</u> reinforced the standard set forth in <u>Charas</u> that state claims must adversely affect deregulation and competition to be preempted.  <u>See id.</u> at 1171.  Because, on the facts of this case, injunctive relief would not adversely affect the policies that the ADA sought to impose, but, again, would support those policies, this Court finds that the ADA does not preempt injunctive relief where Aloha's claim does not relate to Mesa's prices, routes, or serves and such relief would work to further the purpose of the ADA.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Defendants' Motion

to Dismiss.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 19, 2007.



_____
David Alan Ezra
United States District Judge

<u>Aloha Airlines, Inc., et al. vs. Mesa Air Group, Inc., et al.</u>, Civil No. 07-00007
DAE-BMK; ORDER DENYING DEFENDANTS' MOTION TO DISMISS

31